## COHEN v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1924.)

No. 3926.

Injunction ⚖⇒223(2)—Newspaper publication held not violation of strike injunction.

An injunction issued in a railroad strike case, inter alia, restraining defendants and all others from coercing in any manner persons willing to enter the service of plaintiffs, "jeering at or insulting the employees of plaintiffs, or molesting them," and from in any way hindering, obstructing, or impeding the performance by plaintiffs of their business in the usual and normal way, *held* limited in its scope to personal actions and interference, and not violated by the publication in a newspaper of an article characterizing strikebreakers generally as scabs, traitors, etc.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Information by the United States against J. Cohen for criminal contempt. From a judgment of conviction, defendant brings error. Reversed.

D. B. Puryear, of Memphis, Tenn. (Ike W. Crabtree and Abe D. Waldauer, both of Memphis, Tenn., on the brief), for plaintiff in error.

A. A. Hornsby, Asst. U. S. Atty., of Memphis, Tenn. (S. E. Murray, U. S. Atty., and W. H. Fisher, Asst. U. S. Atty., both of Memphis, Tenn., on the brief), for the United States.

Before KNAPPEN, MACK, and DONAHUE, Circuit Judges.

PER CURIAM. This writ is to review a conviction of a criminal-contempt (and sentence) for alleged disobedience of an injunction issued by the court below, in suits by certain railroad companies to restrain unlawful activities by strikers and their sympathizers, at and in

the vicinity of Memphis, during the railway shopmen's strike in 1922. The injunction, in addition to forbidding acts or threats of violence, trespassing upon the railroads' premises for the purpose of interfering with or obstructing the railroads' business, engaging in certain forms of unlawful and offensive picketing, accosting and dogging the steps of railroad employees when going to or from their work, intimidating such employees, so as to prevent them from working for the railroad companies, going to the homes of employees for the purpose of coercing them to leave the railroad service, enjoined generally the defendants, and all affiliated, co-operating, etc., with them, from preventing, or attempting to prevent, any person, by threats, intimidation, force, or violence, from entering into or continuing in the service of the railroads; from compelling or inducing (or attempting so to do), by threats, intimidation, force, violence, fraud, or deception, any person then in the employ of the railroads to cease the performance of his duties; and from "jeering at or insulting the employees of plaintiff or molesting them."

Plaintiff in error was the owner, editor, and publisher of the Labor Review, a newspaper published in Memphis, and had personal knowledge of the injunctions issued, and the averments and allegations of the bills of complaint upon which the injunctions were predicated. He admitted by answer that his sympathies were and are with the defendants in said causes, and that he is affiliated and associated with said defendants to the extent that he is the owner and publisher of the newspaper in question, which, as its name indicates, is devoted to and champions the cause of organized labor. The alleged contempt consisted solely in the publication in an issue of the Labor Review, during the strike and after the issue of the injunction, of an article in effect characterizing the strikebreakers as "dirty scabs," "scavengers," "snakes," and "traitors." The answer correctly states that the article was "a crass denunciation of scabs generally, and, while it made no specific reference to the employees of the railroad companies, complainants in said causes [indeed, it made no reference whatever to any pending strike], it is admitted that it was the result of the conflict then being waged between organized labor and advocates of the open shop and unorganized labor, between the various railroads in the United States and their employees, and was published, as respondent thought, lawfully, in the interest and behoof of organized labor." Respondent denied that by such publication he had any intent to violate the injunction, and asserted the greatest respect for the court below and all the courts of the land.

The information filed by the United States attorney for the district alleges that the purpose of the article was to influence and prevent present employees of the railway companies from continuing in and to prevent others from accepting such employment; to induce and coerce those now employed to quit their employment, and to intimidate and coerce others from accepting the same; to cripple, hinder, and, if possible, prevent, railway companies from conducting their business of carriers in interstate commerce and of the United States mails. The information further alleges that the article was "a jeer and an insult to the employees, known as strikebreakers, and so intended"; that the insulting language was directed to such strike-breaking employees, with the pur-

pose of holding them up to "public scorn," and, if possible, preventing them from continuing in their employment.

As we understand it, the injunction provisions chiefly relied upon by the United States, and the basis of the conclusion reached by the District Judge, are that relating to the use of threats, intimidation, force, or violence to prevent one from entering into or continuing in the service of the plaintiffs; that concerning the employment of threats, intimidation, force, violence, fraud, or deception, to induce one then in the employ of the plaintiffs to cease the performance of his duties; and the provision which enjoins "jeering at or insulting the employees of plaintiffs." The opinion of the District Judge (as does the government's argument) lays much stress upon the provision last above referred to. We are compelled to think that whatever of threats or intimidation (implying physical force, or indication of intent to injure) may be thought to have been wrought by the publication in question (there was no force, violence, fraud, or deception) was effected solely by holding up strike-breakers to public contempt, ignominy, and scorn; or, as expressed by the District Judge, by bringing them "into disrespect, to cause them to be laughed at or insultingly referred to by the public, and thus to deter them from continuing their labors, or so intimidating them as that they would give up their work." In ultimate effect the primary question thus is: Does the publication in question constitute "jeering at or insulting the employees of plaintiff," within the meaning of the injunction?

We think this question must be answered in the negative. Not only do we find nothing in the bills of complaint, or in either order or writ of injunction, suggesting that the court, in using the term "jeering at or insulting" (even if thought broad enough to embrace such threats or intimidation as might thereby be implied), had in mind a newspaper publication issued far from the scene of action, but we think the natural construction of the language used is distinctly to the contrary. The language, by its setting, used as it was in connection with personal and "direct" action by strikers and their sympathizers, such as attacking, accosting, and dogging the steps of employees, going to their homes, and preceded (as it is immediately) by the words, "from coercing in any manner whatever, persons willing to enter the service of the plaintiff, with the object of preventing said parties from entering said service," and followed, as it was, by "from in any way hindering, obstructing, or impeding the operation of the trains of the plaintiff, or the performance by the plaintiffs of their business in the usual and normal way," and, even more, by using the words "jeering at or insulting," in the same clause with and immediately preceding the word "molesting," naturally suggests an action by people on the ground, or, as expressed by counsel for plaintiff in error, "personal insults personally offered," and only by what we think an unwarranted construction can it be stretched to include a newspaper publication such as that involved here. This, which seems to us the natural and normal construction, is reinforced by the application of the rule of ejusdem generis. The Toledo Newspaper Case, 247 U. S. 402, 38 Sup. Ct. 560, 62 L. Ed. 1186, has, we think, no application to the branch of the case we are considering.

We are not called upon to consider whether the publication before us would violate a provision such as contained in the injunction order and writ in the so-called Chicago injunction case, found in the margin hereof.[1] Neither the order nor writ in the instant case contains anything of such substance or tenor. The conclusion we are constrained to reach, that the publication before us is not a violation of the injunction, and thus not a contempt of court, makes it unnecessary to consider the contentions of plaintiff in error that his publication was protected by the constitutional guarantee of freedom of speech and of the press, or that his disavowal of intention to violate the court's order entitled him to discharge, or that the punishment inflicted (a fine of $1,000 and six months' imprisonment) violates the constitutional inhibition against excessive fines and cruel and unusual punishment.

The conclusions we have reached require a reversal of the conviction and judgment, and as, under these conclusions, no conviction could be had, new trial will not be ordered.

---

[1] "In any manner, with intent to further said conspiracy, by letters, printed or other circulars, telegrams, telephones, word of month, oral persuasion, or communication, or through interviews published in newspapers, or other similar acts, encouraging, directing, or commanding any person, whether a member of any or either of said labor organizations or associations defendant herein, to abandon the employment of said railway companies, or any of them, or to refrain from entering the service of said railway companies, or any of them."